IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03172-M-RJ

| | | |
|---|---|---|
| CAMELL D. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CALVIN EARL DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |

This cause is before the court on defendant's instant motion for summary judgment. Mot. [D.E. 36]. For the reasons discussed below, the court grants the motion.

Relevant Procedural History:

On June 5, 2023, Camell D. White ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* an unverified complaint under 42 U.S.C. § 1983. [D.E. 1, 5, 9].

Plaintiff generally alleges: at Maury C.I. at 7:25 a.m. on August 10, 2022, Captain Daniels ("defendant") directed him to remove his pants, which defendant thought were altered; despite not resisting or breaking rules, defendant deployed a taser on him, causing physical and psychological injuries; defendant's excessive force violated the Eighth Amendment and amounted to "assault and battery" under North Carolina law; and Warden Gray was deliberately indifferent when he failed "to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendant[.]" See Compl. [D.E. 1] at 5–7. Plaintiff seeks monetary damages. Id. at 8.

On December 12, 2023, the court dismissed without prejudice Gray as a defendant, allowed the complaint to proceed against defendant, and denied appointment of counsel. Order [D.E. 10].

On June 20, 2024, defendant answered the complaint. Answer [D.E. 29].

On June 21, 2024, the court entered a scheduling order. Order [D.E. 30].

On October 22, 2024, defendant moved for summary judgment, Mot. [D.E. 36], and filed a statement of material facts [D.E. 37], an appendix [D.E. 38], and a memorandum [D.E. 39].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about this motion, the consequences of failing to respond, and the response deadline. [D.E. 40]. Plaintiff, however, failed to respond and the time to do so has passed.

Statement of Facts:

Defendant's undisputed statement of facts is deemed admitted for the purposes of the instant motion. See Fed. R. Civ. P. 56(e)(2); E.D.N.C. Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); see also Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished). Defendant's statement cites the underlying evidence, and the court has reviewed that evidence.

At times relevant to this action, defendant was a Captain at Maury C.I. where plaintiff was housed. See Def.'s Stmt. Mat. Facts [D.E. 37] at ¶¶1–2. All offenders are required to wear the same state-issued uniform absent a doctor's note confirming a medical condition requiring a different uniform. Id. at ¶3. Uniform alterations "pose a threat and risks to safety." Id. at ¶4.

Circa 7:10 a.m. on August 10, 2022, while conducting rounds in the Blue Unit, defendant observed plaintiff was "wearing altered pants that were not the standard issue uniform pants." Id. at ¶13. "Given the safety risk of offenders wearing altered uniforms," specifically a safety

2

concern that these altered pants would risk plaintiff "being able to hide contraband and/or weapons," defendant told plaintiff that he instead would have to wear his state-issued pants. Id. at ¶14. Plaintiff refused and told defendant that he was not going to give defendant "shit." Id.

Defendant then directed plaintiff to return to his cell so he could remove the altered pants and give them to defendant, but plaintiff again refused these orders. Id. at ¶15. Defendant "called for staff assistance to Blue Unit and Blue Unit was locked down." Id.

Plaintiff told defendant that if defendant wanted plaintiff's altered pants, defendant would need to take them from him and that he would "fuck [defendant] up." Id. at ¶16.

Defendant asked plaintiff to submit to restraints, but plaintiff again refused to comply and "began waving an ink pen in a threatening manner" at defendant. Id. at ¶¶17–18.

"To gain compliance, protect himself, and to protect the other offenders and staff, [defendant] deployed his taser once" and then was able to restrain plaintiff. Id. at ¶19.

Per procedure, defendant separated himself once plaintiff was restrained and instructed other officers to take him to be checked by medical and then on to restrictive housing. Id. at ¶20.

Defendant had no further interactions with plaintiff on August 10, 2022, but was informed that plaintiff was screened by Maury C.I. medical staff and did not suffer any injuries. Id. at ¶21. Defendant also prepared an incident report as to this use-of-force event. Id. at ¶22.

As to plaintiff's grievance, the Grievance Board found staff had not acted unprofessionally, the incident was properly handled and investigated, and that no action was required. Id. at ¶23.

An internal review by Officer Douglas-Holloway also recommended no action and found that: "the staff carried out their duties in accordance with procedure"; there was "no evidence of staff misconduct"; and that the "amount of force used was reasonably applied to achieve the

3

recommendation." Id. at ¶¶24–26. Officer Douglas-Holloway's investigation was reviewed by Officer Jermaine Hackney who similarly concluded that: "staff used minimal force to gain compliance of the offender"; "It appears force was appropriate and within policy"; plaintiff "was medically screened"; and that no further action was necessary. Id. at ¶27.

Plaintiff's written statement during the investigation of the incident "did not state any injury he sustained from the incident," but alleged that he did not remove his pants because a female, Officer Sampson, was present. Id. at ¶¶28-29. Officer Sampson, however, has no knowledge of, and was not present for, this use-of-force incident. Id. at ¶29.

## Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

4

Discussion:

First, although plaintiff raises claims against defendant in his official capacity, these claims will be dismissed without prejudice as barred by the Eleventh Amendment because North Carolina has not waived immunity, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989), and the prospective relief exception under the doctrine of Ex parte Young, 209 U.S. 123 (1908), does not apply, cf. Doe v. Univ. of N. Carolina Sys., 133 F.4th 305, 318 (4th Cir. 2025); see Singleton v. Md. Tech. & Dev. Corp., 103 F.4th 1042, 1046–47, 1052 (4th Cir. 2024) (affirming dismissal without prejudice for lack of jurisdiction based on "Eleventh Amendment immunity").

Next, for an Eighth Amendment excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986) ("Whitley")). Considering such a claim, courts "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8 (citation omitted).

"The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough, but anything more will suffice." Id. Here, defendant's taser deployment satisfies the objective component. See Brooks, 924 F.3d at 112.

Next, the subjective component inquires "whether the officers acted with a 'sufficiently culpable state of mind.'" Dean, 984 F.3d at 302 (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). "[T]his is a demanding standard" because the "state of mind required . . .

5

is 'wantonness in the infliction of pain.'" Brooks, 924 F.3d at 112–13 (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)).

At summary judgment, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320–21). An officer's subjective motive may be proved through either direct or circumstantial evidence. Id. at 308–09. The Whitley Court outlined four factors from which inferences may be drawn as to an officer's motives. Brooks, 924 F.3d at 116. These factors are:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Iko, 535 F.3d at 239 (quoting Whitley, 475 U.S. at 321).

An impermissibly punitive motive may be inferred if the officer's use of force "is not reasonably related to a legitimate nonpunitive governmental objective," Brooks, 924 F.3d at 116 (internal quotation marks omitted), but excluded if the force "could plausibly have been thought necessary by the officers in question," Dean, 984 F.3d at 309 (internal quotation marks omitted).

Here, defendant declares, *inter alia*: while conducting rounds in the Blue Unit at Maury C.I. on the morning of August 10, 2022, defendant saw plaintiff "wearing altered pants that were not the standard issue uniform pants"; absent medical authorization, all offenders must wear the same state-issued uniform which ensures staff and officers can identify offenders and take safety precautions; alterations to an offender's uniform pose a threat and a risk to safety; "Specifically, the altered pants Plaintiff was wearing are a risk because offenders can hide contraband"; when defendant saw plaintiff wearing altered pants, defendant directed him to wear unaltered pants;

6

plaintiff refused this direction and said he was not going to give defendant "shit"; defendant directed plaintiff to return to his cell so that he could remove his altered pants and give them to defendant, but plaintiff again refused the orders; plaintiff told defendant that, if defendant wanted his altered pants, defendant would need to take them from him and that he would "fuck [defendant] up"; after plaintiff refused these directives, defendant asked plaintiff to submit to restraints, but he again refused to comply and began waving an ink pen in a threatening manner at defendant; "to gain compliance and remain safe," defendant deployed a taser; following procedures, once plaintiff was restrained, defendant separated from plaintiff and "instructed the other officers present to have Plaintiff checked by medical and taken to restrictive housing unit"; defendant "was informed that Plaintiff was screened by medical staff at Maury Correctional, and he did not suffer any injuries"; and defendant "was not with Plaintiff at medical" and "did not have any further interaction with Plaintiff on August 10, 2022." See Def.'s App., Daniels Decl. [D.E. 38-1] at ¶¶1–8.

Plaintiff, by contrast, has not offered affidavits or declarations in opposition to defendant's motion for summary judgment despite receiving adequate notice under Roseboro, 528 F.2d at 310, and having an opportunity to do so, cf. Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021). Instead, plaintiff merely relies on the allegations in his unverified complaint, cf. Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021), and presents no competent direct summary judgment evidence, see Fed. R. Civ. P. 56(e); cf. Dean, 984 F.3d at 308. Accordingly, the court will consider the circumstantial evidence, applying the Whitley factors.

Turning to the first Whitley factor – "the need for the application of force" – as noted above, defendant declares: plaintiff's altered uniform pants presented a security risk; plaintiff refused to comply with defendant's directions to give up the altered pants, stating defendant would

7

need to take them from him and he would "fuck [defendant] up"; when defendant told him to submit to restraints, plaintiff refused to comply and waived an ink pen at defendant in a threatening manner; and, to gain compliance and remain safe, defendant deployed his taser. See Def.'s App., Daniels Decl. [D.E. 38-1] at ¶¶1–7; accord Def.'s Stmt. Mat. Facts [D.E. 37] at ¶¶13–19.

The record generally supports an inference that force was needed. Def.'s App., Daniels Decl. Attach. [D.E. 38-2] at 1–6 (incident report finding, *inter alia*: staff carried out their duties in accordance with procedures; force was reasonably applied to achieve the correctional objective; and there was no evidence of staff misconduct); see Brooks, 924 F.3d at 113 ("Corrections officers act in a 'good faith effort to maintain or restore discipline' — that is, with a permissible motive — not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures.").

Aside from the unsworn claims in his self-serving witness statement and prison grievance, see Def.'s App., Daniels Decl. Attach. [D.E. 38-2] at 11, 19–22, there is no support for the bald allegations in plaintiff's unverified complaint that he was "not resisting or breaking rules," Compl. [D.E. 1] at 5, see Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)). Thus, the first Whitley factor favors defendant.

The court now turns to the second Whitley factor – "the relationship between the need and the amount of force that was used." As noted above, defendant states and declares, and the record similarly reflects, that plaintiff refused multiple orders, verbally threatened defendant, and was unsecured and waving an ink pen in a threatening manner when defendant deployed the taser. See

8

Def.'s Stmt. Mat. Facts [D.E. 37] at ¶¶13–19; Def.'s App., Daniels Decl. [D.E. 38-1] at ¶¶2–6; Def.'s App., Daniels Decl. Attach. [D.E. 38-2] at 1–6.

The record does not support an inference that defendant's use of force was greater than necessary to achieve the penological objective of bringing plaintiff into compliance and restoring order. See Whitley, 475 U.S. at 321 ("When the ever-present potential for violent confrontation and conflagration, . . . ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators . . . carries a special weight." (internal quotations and citations omitted)); Brooks, 924 F.3d at 113 ("[A] manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason."); see also Crayton v. Adams, No. 7:13–cv–00078, 2013 WL 5918508, at *1 (W.D. Va. Nov. 1, 2013) ("Federal courts are poorly equipped to second guess the split second security decisions of prison officials."). Thus, the second Whitley factor also favors defendant.

The court now turns to the third Whitley factor – "the extent of any reasonably perceived threat that the application of force was intended to quell." As noted above, defendant states and declares that plaintiff's altered pants were a security risk, he refused commands to remove these pants and submit to restraints, he verbally threatened defendant, he was waiving an ink pen at defendant in a threatening manner, and he was not secured when the taser was deployed. See Def.'s Stmt. Mat. Facts [D.E. 37] at ¶¶13–19; Def.'s App., Daniels Decl. [D.E. 38-1] at ¶¶1–6.

Because the record supports an inference that defendant reasonably perceived plaintiff's actions as a threat to safety and institutional order, cf. Dean, 984 F.3d at 304, the third Whitley factor also favors defendant.

9

The court now turns to the fourth Whitley factor – "any efforts made to temper the severity of a forceful response." As noted above, defendant states and declares that he: gained compliance after deploying the taser once; separated himself from plaintiff; directed other officers to escort plaintiff for medical evaluation; and did not have further interaction with plaintiff that day. See Def.'s Stmt. Mat. Facts [D.E. 37] at ¶¶19–20; Def.'s App., Daniels Decl. [D.E. 38-1] at ¶¶6–7.

The record supports an inference that defendant tempered the severity of his response, see Def.'s App., Daniels Decl. Attach. [D.E. 38-2] at 1–6; id. at 9–10 (showing one five-second taser deployment), and the fourth Whitley factor favors defendant, see Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The available record also indicates that plaintiff received a screening evaluation and was medically cleared shortly after this use-of-force incident. See Def.'s App., Daniels Decl. Attach. [D.E. 38-2] at 4 (incident report reflecting that a medical screening nurse observed: "three small puncture sites that form a circle and a small welt beside that visible on the left lower abdomen where the Taser was discharged. No visible prongs. No other apparent injuries; vital signs are stable. Offender cleared medically to be placed in restrictive housing."). Thus, although it is not a dispositive factor, plaintiff's relatively minor injuries likewise weigh in favor of a finding that defendant's use of force was not excessive. See Hudson, 503 U.S. at 7 (noting: "the extent of injury suffered by the inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." (citation omitted)).

10

Considering the Whitley factors, the court finds that, on the present record, no "reasonable jury could find that defendant acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (citation omitted); see Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion").

After viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendant has met his burden of showing the absence of evidence to support plaintiff's Eighth Amendment excessive force claims, see Celotex, 477 U.S. at 325, but plaintiff merely relies on the allegations in his unverified complaint, Anderson, 477 U.S. at 248, and fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted).

Thus, defendant is entitled to summary judgment. Anderson, 477 U.S. at 249; see Whitley, 475 U.S. at 322 ("Unless it appears that the evidence viewed in the light most favorable to plaintiff will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.").

Alternatively, because defendant is a government official and, after viewing the facts in the light most favorable to plaintiff, there is no showing that defendant violated plaintiff's constitutional rights, defendant also is entitled to qualified immunity from civil damages. See Tolan v. Cotton, 572 U.S. 650, 655–56 (2014); Pearson v. Callahan, 555 U.S. 223, 236 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Finally, because defendant is entitled to summary judgment and dismissal of all federal claims against him, after considering issues of judicial economy, convenience, fairness, and

comity, see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995), the court declines to exercise supplemental jurisdiction over any lingering state-law claims, see 28 U.S.C. § 1367(c)(3) (granting district courts discretion to decline to exercise supplemental jurisdiction over a pendent state-law claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding a district court has "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

## Conclusion:

For the reasons discussed above, the court: GRANTS defendant's motion for summary judgment [D.E. 36]; DISMISSES the individual capacity federal claims; DISMISSES WITHOUT PREJUDICE the official capacity federal claims and any pendent state-law claims; and DIRECTS the clerk to close the case.

SO ORDERED this 13th day of May, 2025.

RICHARD E. MYERS II
Chief United States District Judge